UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILLIE D. BELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-628 (RBW) |
| | ) | |
| ROBERT D. SNYDER, in his official capacity as Acting Secretary of the U.S. DEPARTMENT OF VETERANS AFFAIRS, | ) ) ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

    The plaintiff, Willie D. Belton, who was employed by the Department of Veterans Affairs ("Veterans Affairs") until his termination in December 2011, claims that the defendant, Robert D. Snyder, in his official capacity as the Acting Secretary of Veterans Affairs,[1] engaged in discriminatory and retaliatory acts in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2012), in connection with the plaintiff's request for a reasonable accommodation for his alleged disability and his subsequent termination. See generally Complaint ("Compl.") ¶¶ 36–41. Currently pending before the Court is the defendant's Motion for Summary Judgment ("Def.'s Mot.") and his accompanying Memorandum in Support of Motion for Summary Judgment, ECF No. 28 ("Def.'s Mem."), along with the defendant's Supplemental Motion for Summary Judgment, ECF No. 34 ("Def.'s Supp. Mot."), which the Court permitted the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Robert D. Snyder is automatically substituted for the prior Secretary of Veterans Affairs.

defendant to file on September 1, 2015.  Upon careful consideration of the parties' submissions, the Court concludes that summary judgment must be granted in the defendant's favor.[2]

## I.   BACKGROUND

The lengthy background of this case, which involves events spanning several years embodied in a series of letters, is based on the following facts, which are undisputed unless otherwise noted.[3]  The plaintiff was employed as an electrician at a Veterans Affairs medical facility located in the District of Columbia.  Compl. ¶¶ 5–6.  "On or about April 5, 2003, [the p]laintiff submitted a handwritten request for a non-specific reasonable accommodation due to [his] job related illness."  Def.'s Facts ¶ 1; see Def.'s Mem., Exhibit ("Ex.") 1 at D000060.[4]  Shortly thereafter, on April 16, 2003, the plaintiff's attorney faxed a handwritten memorandum to the plaintiff's supervisors, Pedro Garcia and Michael Slagle, stating that it enclosed a one-page "medical report f[or] Willie Belton from his doctor recommending [a] specific work assignment,"[5] Def.'s Facts ¶ 2, which was accompanied by the one-page report, Def.'s Mem., Ex. 2 at D000059.  The medical report, signed by Stefan Lund, Ph.D., indicated that the plaintiff received treatment on April 11, 2003, that his diagnosis was "confidential," but that "[i]t [was]

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's answer to the Complaint ("Answer"); (2) the Defendant's Statement of Undisputed Material Facts ("Def.'s Facts"); (3) the Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff's Statement of Material Facts in Dispute ("Pl.'s Facts"); (5) the Defendant's Supplemental Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Supp. Mem."); (6) the Defendant's Response to Plaintiff's Statement of Material Facts in Dispute ("Def.'s Resp. to Pl.'s Facts"); (7) the Plaintiff's Response to the Court's Order to Show Cause ("Pl.'s Show Cause Resp."); and (8) the Defendant's Reply to Plaintiff's Response to the Court's Show Cause Order [] ("Def.'s Show Cause Reply").

[3] Pursuant to Local Civil Rule 7(h)1), the Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 7(h)(1) (emphasis added).

[4] Although the plaintiff's handwritten request is dated April 5, 2003, it is stamped "Received on [May 5, 2003]."  Def.'s Mem., Ex. 1 at D000060.

[5] It appears that at the relevant time, Garcia was the chief of Facilities Management at the Veterans Affairs facility where the plaintiff worked.  See Def.'s Mem., Ex. 3 at D000052.

strongly recommended that [the plaintiff] . . . be assigned to do work as an electronics technician in the Biomedical section." Def.'s Mem., Ex. 2 at D000059; see also Def.'s Facts ¶ 2.

In a letter dated May 9, 2003, regarding "the request from [the plaintiff] received on May 5, 2003," Mr. Garcia stated, "the information . . . provided is insufficient for . . . [Veterans Affairs] to determine if you are currently a qualified individual with a disability" and that "[w]ithout the necessary medical documentation, . . . [Veterans Affairs] cannot make an informed assessment of [the plaintiff's] request for an accommodation." Def.'s Mem., Ex. 3 at D000051; see also Def.'s Facts ¶ 3. The letter set forth a list of the "information needed to determine if [the plaintiff was] a qualified individual with a disability, including a detailed description of [the plaintiff's] exact medical condition(s)," "[c]linical findings," "[a]n explanation of the impact of the stated medical condition on [the plaintiff's] overall health and activities," and "[a] detailed description of the precise accommodation recommended by [the plaintiff's] health care provider, including the basis of the recommendation and an explanation of how the proposed accommodation will allow [the plaintiff] to perform the particular job duty at issue." Def.'s Mem., Ex. 3 at D000051.

Several months later, on or about August 27 or 28, 2003, after "request[ing] sick leave and provid[ing] his supervisor a doctor's note," and alleging an illness "due to acute agitation from workplace stress," the plaintiff "never returned to work." See Def.'s Facts ¶¶ 4–5; see also Def.'s Mem., Ex. 4 at D000050. On August 28, 2003, a medical doctor, Daniel O'Connell, signed an attending physician's report finding that the plaintiff suffered from "depression, tension, [and] agitation in [the] setting of work stress" caused or aggravated by "perceived harassment and threats by supervisors." Pl.'s Opp'n, Ex. 5. The report indicated that the

plaintiff had been treated with medication and psychotherapy.  Id.  But see Def.'s Response to Pl.'s Facts at 1 (disputing the plaintiff's characterization of the attending physician's report).

About a month later, on September 30, 2003, the plaintiff submitted a handwritten letter addressed to a "human resources specialist" and regarding "requested information," which enclosed a two-paragraph letter from Dr. Lund, who is identified as a psychotherapist.  Def.'s Mem., Ex. 5 at D000049.  The plaintiff's letter recounted the following:

> On August 27, 2003, I was working on the condinsate [sic] return system, I rebuilt the whole system with new operating parts, I had to modify certain things because the parts were no longer available.  I got the system up and running and [it] is still on line to this date.  I was working on the other condinsate [sic] system getting it back online.  I showed [illegible] a control panel operator that I had gotten half of that system on line but it was still a little bit more that I had to do.  I was trying to explain this to my superior Mike Slagle who refused to listen. . . .  [T]his is one of those rageful [sic] moments I've had within the pas[t] [two] years.  I'm not employed b[y] anyone and I am currently seeking mental health to help me deal with this stressful environment.  On August 27 03 from 1130 to 330 I took sick leave to August 29, 03[,], Annual leave from Sept 2, 03 to Sept 9, 03[, and] Leave without pay from Sept 10, 03 to the present.

Def.'s Mem., Ex. 5 at D000047–48.  In addition, the attached letter from Dr. Lund, dated September 26, 2003, stated that the plaintiff "has experienced significant stress from his work environment" "since [December 20, 2001]," that the plaintiff's efforts "to develop strategies by which the situation at work would be more tolerable" were "unsuccessful," and as a result, "we have been forced to recommend disability from [August 27, 2003]."  Id. at D000049; see Def.'s Facts ¶ 7 (Dr. Lund "recommended that [the p]laintiff be placed on disability effective August 27, 2003").  Shortly thereafter, in late September 2003, the plaintiff filed a worker's compensation claim with the United States Department of Labor.  Def.'s Facts ¶ 6.

On October 7, 2003, Mr. Garcia sent a letter to the plaintiff informing him that he had been absent without leave since September 10, 2003, and directing the plaintiff to return to work.  See Def.'s Facts ¶ 8; Def.'s Mem., Ex. 6 at D000046.  The letter also cautioned that "[c]harges of

4

[absent without leave] can be used as a basis for disciplinary action being initiated against [the plaintiff], up to and including removal from emplacement with . . . Veterans Affairs." Def.'s Mem., Ex. 6 at D000046. The plaintiff responded in an October 20, 2003 letter stating that he had previously requested leave without pay pending the Department of Labor's review of his worker's compensation case, that he was renewing that request, and that he was "unable to return to a duty status at this time . . . ." Def.'s Mem., Ex. 7 at D000044; see also Def.'s Facts ¶ 9.

The plaintiff was asked in response to his letter to provide more detailed medical information because the September 2003 note from Dr. Lund was "not clear enough to make a determination of [the plaintiff's] disability." See Def.'s Mem., Ex. 8 at D000042–43 (November 3, 2003 letter requesting "detailed medical documentation" and providing a list of the documentation to be provided by November 24, 2003); see also Def.'s Facts ¶ 10. The response also indicted that the plaintiff's status had been restored to "leave without pay." Def.'s Mem., Ex. 8 at D000043. On November 20, 2003, the plaintiff provided a one-page report indicating that the plaintiff was treated by Dr. O'Connell on November 12, 2003, who concluded that the plaintiff's return to regular work was "uncertain" and advised that the plaintiff needed "accommodation in [the] form of [a] supporting work environment free from harassment." Def.'s Mem., Ex. 10 at D000039; see also Def.'s Facts ¶ 12. In the interim, however, Veterans Affairs, in a letter dated November 13, 2003, denied the plaintiff's May 2003 reasonable accommodation request due to the lack of medical documentation "required to determine if [the plaintiff was] a qualified individual with a disability." Def.'s Mem., Ex. 9 at D000041.

Almost a year later, on October 12, 2004, Mr. Garcia sent a letter to the plaintiff stating that the plaintiff's worker's compensation claim before the Department of Labor had been resolved earlier that year in March 2004, but that the plaintiff failed to make contact with his

supervisors or return to work.  See Def.'s Facts ¶ 15; see also Def.'s Mem., Ex. 11 at D000035.

Mr. Garcia directed the plaintiff to return to work within two weeks, and cautioned that "failure to do so will result in disciplinary action . . . up to and including removal from employment . . . ."  Def.'s Mem., Ex. 11 at D000035.  The plaintiff responded in a letter stating that, in accordance with his doctor's assessment, he was "disabled, until further notice" and that he would "notify [Mr. Garcia] when [his] doctor's assessment is different than expressed . . . ."  Def.'s Mem., Ex. 12 at D000031; see also Def.'s Facts ¶ 16; Pl.'s Facts ¶ 5; Pl.'s Opp'n, Ex. 12.  Included with the plaintiff's response was the August 2003 attending physician's report by Dr. O'Connell.  See Pl.'s Opp'n, Ex. 12.

Mr. Garcia again requested more detailed medical evidence from the plaintiff to substantiate the plaintiff's claimed disability in a letter dated January 3, 2005, see Def.'s Facts ¶ 17; Def.'s Mem., Ex. 13 at D000023–24; Pl.'s Facts ¶ 6, and warned the plaintiff that his "absences had continued beyond a reasonable time" and that "adverse action may be taken . . . ."  Def.'s Mem., Ex. 13 at D000023.  The plaintiff responded in a January 25, 2005 letter, stating that he was "not trying to retire at this time," but instead was "requesting [a] reasonable accommodation in the matter in which both of [his] physicians ha[ve] suggested," Def.'s Mem., Ex. 14 at D000018; see also Def.'s Facts ¶ 18; Pl.'s Facts ¶ 7, and with the letter submitted a one-page verification of treatment report signed by Dr. O'Connell, Pl.'s Opp'n, Ex. 14.  The verification of treatment report stated that the plaintiff's "prognosis was favorable once [the] recommended accommodation has been provided," that the plaintiff could "resume regular work . . . when [the] recommended accommodation has been provided," and "strongly recommended that [the plaintiff] be transferred away from the [Veterans Affairs] medical center and reassigned in an administrative capacity."  Id.

The director of the Veterans Affairs medical center, Sanford Garfunkel, having received the plaintiff's January 25, 2005 letter, informed the plaintiff that he "ha[d] not provided the proper medical documentation for . . . [Veterans Affairs] to make a reasonable accommodation determination" and that he had failed to return to duty as directed by Garcia on several previous occasions.  Def.'s Mem., Ex. 16 at D000014; see also Def.'s Facts ¶ 20.  The letter also informed the plaintiff that "[Veterans Affairs] will forward the release of medical information [the plaintiff] mailed to us to [the plaintiff's] healthcare provider and give them thirty days upon receipt to produce the requested information," and that his accommodation request would be reviewed upon receipt of that information.  Def.'s Mem., Ex. 16 at D000015.  A separate letter was also sent to Dr. O'Connell seeking further information regarding the plaintiff's accommodation request, but a response was not provided.  See Def.'s Facts ¶¶ 21–22; Def.'s Mem., Ex. 17 at D000012–13 (March 10, 2005 letter seeking within thirty days additional information from Dr. O'Connell).

After the plaintiff denied in a letter dated April 19, 2005, knowing that the medical information he had already provided was deemed insufficient, see Def.'s Facts ¶ 23; Def.'s Mem., Ex. 18 at D000010 ("[T]his is the first time that I have been made aware that the medical docume[nta]tion that I submitted from my physicians wasn't enough to make a determination"), Mr. Garfunkel informed the plaintiff in a letter dated May 16, 2005, that his absences were a "separate issue from [his] request for [a] reasonable accommodation" and that "[a]ny decision regarding the [absent without leave charges] will not be delayed because of [the] request for a reasonable accommodation," Def.'s Mem., Ex. 19 at D000009; see also Def.'s Facts ¶ 24.

On August 28, 2005, now two years after the plaintiff stopped reporting for work, the plaintiff provided a two-page letter from Dr. O'Connell that described the plaintiff's medical

condition, treatment, and prognosis. See Def.'s Facts ¶ 26; Def.'s Mem., Ex. 21 at D000003–04; Pl.'s Facts ¶¶ 8–9. Dr. O'Connell's letter stated that the plaintiff had been his patient since December 2001, was diagnosed with "Adjustment Disorder with Mixed Anxiety and Depression," and was "maintained on a regimen of antidepressant/anxiolytic medications." Def.'s Mem., Ex. 21 at D000003. Dr. O'Connell also provided the following additional information:

> Prominent symptoms when first seen included pervasive depression, persistent anxious ruminations, diminished energy level, poor concentration, and sleep disturbance. Symptoms had arisen in context of a work situation in which he felt himself to have been subjected to unfair and prejudicial treatment over an extended period of time by his supervisor[.] The situation eased when he was assigned to a different work detail, but was again exacerbated in the spring of 2003 when he was reassigned to work under the supervisor with whom he had experienced earlier conflict. He was reportedly threatened by a supervisor that harm would come to him if he did not rescinded the OEO complaint that he had filed regarding the perceived prejudicial treatment. Several recommendations were submitted from this office recommending reassignment away from the hostile work setting to a supporting working environment. In the absence of such an accommodation, it has not been possible for Mr. Belton to return to the workplace for the past 16 months[.] Contemplating such a return regularly precipitates a recurrence of the anxiety and depression, which otherwise have been held in check by the medication and psychotherapy[.] His phobic response to the workplace at this point extends to the entire medical center.

Def.'s Mem., Ex. 21 at D000003. Dr. O'Connell renewed his recommendation that the plaintiff be reassigned to "an administrative post away from the medical center itself." Id. at D000004. Dr. O'Connell also recommended that the plaintiff return to work on a "half-time basis initially," and opined that "[a]fter a period of some weeks . . . it is foreseen that the workday could be expanded to full-time." Id.

After receiving Dr. O'Connell's letter, the Veterans Affairs' equal opportunity office attempted to obtain "clarification on an issue and some additional information," specifically, whether the plaintiff's "combination of medications sufficiently controls his condition enough to

allow him to work" and "whether there is a timeframe on the proposed accommodation or if his condition is permanent."  Def.'s Mem., Ex. 22 (October 25, 2005 letter addressed to Dr. O'Connell); see also Def.'s Facts ¶ 27; Pl.'s Facts ¶ 10.  Dr. O'Connell never provided a response.  Def.'s Facts ¶ 28.

Sometime thereafter, the plaintiff contacted a congressman seeking his assistance regarding the plaintiff's treatment by the Department of Veterans Affairs and provided the congressman with the documentation he had provided to the Department of Labor concerning his situation.  See Pl.'s Facts, Ex. 13, Pl.'s Opp'n, Ex. 26 at Belton002–Belton008 (letter from the plaintiff to former Congressman Albert R. Wynn).  Although the letter itself is undated, it appears from the congressman's response that the plaintiff contacted him sometime prior to June 2008.  See Pl.'s Opp'n, Ex. 26 at Belton009 (June 28, 2007 letter from former Congressman Wynn to a secretary of congressional affairs at the Department of Labor regarding the plaintiff).  In addition, the plaintiff appears to have contacted a Maryland Senator regarding his case sometime prior to June 2009.  See Pl.'s Opp'n, Ex. 27 at Belton064 (June 28, 2009 letter from the director of the Veterans Affairs medical center responding to former Senator Barbara Mikulski's "inquiry on behalf of [her] constituent, Mr. Willie D. Belton").

It appears that, around the same time the plaintiff contacted Senator Mikulski, the defendant attempted to remove the plaintiff from his employment under the "abandonment of position doctrine," which was found by the Merit Systems Protection Board (the "Board") to be inappropriate due to the plaintiff's efforts to obtain assistance from lawmakers, which the Board viewed as the plaintiff's willingness to return to work and was thus inconsistent with terminating the plaintiff's employment on the basis of abandonment.  Pl.'s Opp'n, Ex. 30 (Final Order, Belton v. Dep't of Veterans Affairs, DC-0752-10-0805-1-1 (M.S.P.B. 2011) at 2; see also id.,

9

Ex. 31 (August 26, 2009 letter from the plaintiff to the Veterans Affairs medical center asking, "When can I report for duty?" and enclosing Dr. Frank J. Genova's 2007 medical report).

Two months later, in October 2011, the defendant proposed the termination of the plaintiff's employment due to his absence from work without leave and failure to comply with leave procedures since 2003. See Def.'s Mem., Ex. 23 (letter from Veterans Affairs to the plaintiff proposing his termination due to his absence without leave and failure to comply with leave procedures). In December 2011, the defendant issued its final decision terminating the plaintiff's employment. See id., Ex. 24 (letter from Veterans Affairs to the plaintiff terminating his employment).

The plaintiff contends that he "has exhausted his administrative remedies and timely filed this complaint within 30 days after the receipt of the Equal Employment Opportunity Commission's decision on April 2, 2013." Compl. ¶ 2. The plaintiff seeks an award of "lost wages and benefits, front pay and benefits, $300,000 in compensatory damages for pain and suffering, mental anguish, and emotional distress on each count [of the Complaint], interest, costs, and the amount of tax on any award, and reasonable attorney's fees." Id. at 7.

## II.   STANDARD OF REVIEW

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in original) (citation and internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, but rather "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III. ANALYSIS

A. **The Plaintiff's Disability Discrimination and Failure to Accommodate Claims (Counts I and II of the Complaint)**

1. **Whether the Plaintiff's Failure to Accommodate Claim Is Barred by Res Judicata**

In its March 15, 2016 Order, the Court directed the plaintiff to demonstrate why his failure to accommodate claim should not be barred by res judicata, given that he previously asserted that Veterans Affairs failed to provide reasonable accommodations for his severe depression and anxiety in a prior action that was dismissed by another member of this Court. See Order at 1–3 (Mar. 15, 2016), ECF No. 42; see also Compl. ¶¶ 1, 11–16, 21–30; Plaintiff's Amended Complaint ¶¶ 20–21, Belton v. Principi, Civil Action No. 04-704 (EGS) (Mar. 29, 2005). Res judicata bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." Porter v. Shah, 606 F.3d 809, 813–14 (D.C. Cir. 2010) (quoting Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC, 569 F.3d 485, 490 (D.C. Cir. 2009)). Here, the plaintiff's failure to accommodate claim is not barred by res judicata because, although his amended complaint in the prior action contained similar factual assertions, that court did not have jurisdiction to render judgment on a claim arising from the facts in this case.

A court must dismiss a Rehabilitation Act claim for lack of subject-matter jurisdiction if a plaintiff has failed to exhaust his administrative remedies. See Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006). A plaintiff fails to exhaust his administrative remedies if he does not initiate contact with an equal employment counselor within forty-five days of the alleged discriminatory conduct. See Doak v. Johnson, 19 F. Supp. 3d 259, 270 (D.D.C. 2014). When

the prior case was pending, the plaintiff had not exhausted his administrative remedies with respect to his claim for failure to accommodate because he had not timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") based on the facts underlying that claim. See Defendant's Renewed Motion to Dismiss, and in the Alternative, Motion for Summary Judgment, Ex. 2 (Agency's Motion for Consolidation) at 2, Belton v. Principi, Civil No. 04-704 (EGS) (May 19, 2005) (noting that while the plaintiff lodged an EEOC complaint regarding his failure to accommodate claim on September 29, 2003, the EEOC dismissed the complaint for failing to comply with applicable time limits). Thus, the prior court lacked jurisdiction to adjudicate the plaintiff's failure to accommodate claim, and as a result, res judicata does not bar the plaintiff's failure to accommodate claim in this case. See Howard v. Gutierrez, 474 F. Supp. 2d 41, 51 (D.D.C. 2007) (holding that res judicata did not bar plaintiff's Rehabilitation Act claim where, if she had pleaded the claim in her initial Title VII complaint, it would have been dismissed without prejudice for failure to exhaust her administrative remedies). Accordingly, the Court will discharge the show cause order and address the merits of the plaintiff's claims.

### 2. Whether the Plaintiff Has a "Disability"

The Rehabilitation Act prohibits federal agencies from discriminating against employees on the basis of a disability. 29 U.S.C. § 794(a); see Taylor v. Rice, 451 F.3d 898, 905 (D.C. Cir. 2006) (Rehabilitation Act provides a private right of action against federal agencies for employment discrimination claims on the basis of a disability). For a plaintiff's Rehabilitation Act claims to survive a motion for summary judgment, the plaintiff "must produce enough evidence to allow a reasonable jury to conclude that he (1) has a disability; (2) was qualified to perform the essential functions of employment with or without reasonable accommodation; and

(3) suffered an adverse employment decision due to his disability." Desmond v. Mukasey, 530 F.3d 944, 952 (D.C. Cir. 2008) (citing Duncan v. WMATA, 240 F.3d 1110, 1114 (D.C. Cir. 2001)).

The defendant argues that the record fails to establish that the plaintiff is a person with a "disability." See generally Def.'s Supp. Mot. at 2–7. The Rehabilitation Act provides that the non-discrimination and non-retaliation provisions encoded in the Americans with Disabilities Act of 1990 (the "ADA") apply to claims brought by persons alleging discrimination on the basis of a disability. See 29 U.S.C. § 791(f) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the [ADA] (42 U.S.C. [§] 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the [ADA] (42 U.S.C. [§§] 12201–12204 and 12210), as such sections relate to employment."); see also Moghenhan v. Napolitano, 613 F.3d 1162, 1165 (D.C. Cir. 2010) (recognizing the application of the ADA to discrimination claims arising under the Rehabilitation Act); Breen v. Dep't of Transp., 282 F.3d 839, 841 (D.C. Cir. 2002) (recognizing that employment discrimination standards are the same under the Rehabilitation Act and the ADA) .

The ADA bars employment discrimination against qualified individuals with a disability. See 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."). An individual is "disabled" under the ADA "if[] (1) he suffers from an impairment; (2) the impairment limits an activity that constitutes a major life activity under the Act; and (3) the limitation is substantial." Haynes v. Williams, 392 F.3d 478, 482

(D.C. Cir. 2004); see 42 U.S.C. § 12102(1).[6] The term "substantially limiting" requires a showing that the impact of the impairment is "permanent or long term." Toyota Motor Mfg, Ky., Inc. v. Williams, 534 U.S. 184, 198 (2001); see also Thompson v. Rice, 422 F. Supp. 2d 158, 170 (D.D.C. 2006) ("Merely submitting a medical diagnosis of an impairment is insufficient to establish disability status. Instead, a plaintiff must '[offer] evidence that the extent of the limitation [caused by the impairment] in terms of their own experience . . . is substantial.' The impairment must 'prevent or severely restrict" the individual in the major life activity at issue and must have a permanent or long-term impact.") (quoting Toyota Motor, 534 U.S. at 198) (first alteration in original)). The plaintiff bears the burden to establish that he is disabled. See Haynes, 392 F.3d at 482.

The plaintiff asserts (1) that he suffers the mental impairment of depression and anxiety, (2) that his condition impairs his ability "to think, concentrate, and sleep," and (3) that his symptoms are long-term as shown by the medical documentation he provided between April 2003 and March 2007. Pl.'s Opp'n to Supp. Mot. at 2–3. The Court agrees for several reasons with the defendant's contention that the plaintiff has failed to meet the threshold requirement of the ADA, i.e., establishing that he has a "disability" entitling him to the ADA's antidiscrimination protections. First, "if the impact of an impairment can be eliminated by changing the address at which an individual works, that impairment is neither permanent nor long term." Haynes, 392 F.3d at 483. In Haynes, the plaintiff claimed that an allergic reaction to

---

[6] Significant changes to the Rehabilitation Act and ADA took effect on January 1, 2009. See ADA Amendments Act of 2008, Pub. L. No. 110–325 (2008). However, the District of Columbia Circuit has held that "the [2009] [a]mendments do not apply retroactively." Lytes v. D.C. Water and Sewer Auth., 572 F.3d 936, 938–42 (D.C. Cir. 2009). Accord EEOC v. Agro Distribution, LLC, 555 F.3d 462, 470 n.8 (5th Cir. 2009); Fredricksen v. United Parcel Serv., 581 F.3d 516, 521 n.1 (7th Cir. 2009); Moran v. Premier Educ. Grp., 599 F. Supp. 2d 263, 271–72 (D. Conn. 2009)). Accordingly, where the alleged discriminatory conduct occurred before 2009, courts must apply the law prior to enactment of the 2009 amendments to determine whether a person is an "individual with a disability." Lytes, 572 F.3d at 942.

environmental conditions at his workplace caused itching that impeded his ability to sleep, leading to his inability to come to work during the designated work hours and his eventual termination. Id. at 479–82. The Circuit upheld the district court's decision to grant the employer's summary judgment motion, concluding that because the plaintiff's impairment (his alleged inability to sleep) could have been resolved by moving the plaintiff to a different work location, he was not "substantially limited" by his impairment. Id. at 483.

The Circuit's reasoning in Haynes applies with equal force here, where the plaintiff has put forward evidence showing that, in his medical providers' opinions, moving the plaintiff away from his work location or supervisor could have resolved his condition. See Pl.'s Opp'n, Ex. 18 (doctor's letter recommending that the plaintiff be reassigned to a different location "away from the medical center itself"); id., Ex. 20 (same); id., Ex. 21 (Deposition of Stephen A. Lund, Ph.D ("Lund Dep.")) at 79:1–24 (testimony by the plaintiff's psychotherapist stating that the plaintiff could have performed duties as an electrician if he was located away from the specific Veterans Affairs medical center to which he was assigned); id., Ex. 22 (Video Deposition of Frank Joseph Genova ("Genova Dep.")) at 27:22–28:11 (testimony by the plaintiff's psychiatrist that the plaintiff "experienced a phobic-like response when attempting to enter the facilities where he formerly worked . . . that would prevent him from essentially stepping onto the property" (emphasis added)). The record therefore shows that the plaintiff's depression and anxiety would abate if he worked elsewhere, and as a result, the plaintiff has failed to establish a permanent or long-term impairment that qualifies as a "disability" under the ADA.

Second, to the extent the plaintiff's anxiety and depression were based on or caused by his allegedly strained relationship with his supervisor, see id., Ex. 20 (doctor's letter stating that the plaintiff's "[s]ymptoms had arisen in [the] context of a work[] situation in which he felt

himself to have been subjected to unfair prejudicial treatment over an extended period of time by his supervisor"), this is not a sufficient ground to establish a disability under the ADA, see Adams v. Alderson, 723 F. Supp. 1531, 1531 (D.D.C. 1989) (district court found that the medical evidence demonstrated that the plaintiff's condition, a "'maladaptive reaction to a psychosocial stressor' viz., the antagonizing supervisor, [] [was] [] a transitory phenomenon that can be expected to disappear when the 'psychological stressor' is removed," and thus the court concluded that the alleged impairment was not substantial for purposes of the ADA); see also Franklin v. Pepco Holdings, Inc., 875 F. Supp. 2d 66, 71 (D.D.C. 2012) ("[A]llegations of stress caused by the conduct of others at an employee's workplace will generally fail to state a claim for disability under the ADA, because workplace-specific stress does not affect an employee's ability to perform 'either a class of jobs or a broad range of jobs in various classes.' (citing 29 C.F.R. § 1630.2(j)(3)(i) (EEOC regulation discussing "disability" under the ADA))); Coleman–Adebayo v. Leavitt, 326 F. Supp. 2d 132, 141 n.6 (D.D.C. 2004) ("An impairment limited to and arising from stress at work does not qualify as a disability.") (citations and alterations omitted)).

While the plaintiff attempts to rely on Miller v. Hersman, 759 F. Supp. 2d 1 (D.D.C. 2011), that case is distinguishable from both Haynes and this case. In Miller, the court denied the defendant's motion for summary judgment because there was conflicting evidence as to whether or not the plaintiff's impairment was tied to the particular workplace. 759 F. Supp. 2d at 13. Specifically, the court found that there was a genuine issue of material fact on this issue, given that the plaintiff did not request a transfer as a reasonable accommodation and there was conflicting medical evidence as to whether or not the plaintiff could have performed his duties in a different environment. Id. Here, the testimony of the plaintiff's medical provider unequivocally states that the defendant's "phobic reaction" is tied specifically to the medical

17

center where he was assigned.  See Pl.'s Opp'n, Ex. 22 (Genova Dep.) at 27:22–28:11.  In light of this evidence, the plaintiff has failed to establish that he is "disabled" within the meaning of the Rehabilitation Act, and summary judgment must be granted in favor of the defendant with respect to Counts I and II of the Complaint.

### B. The Plaintiff's Retaliation Claim

The plaintiff also claims that the defendant's decision to terminate his employment was made "in retaliation for requesting reasonable accommodations."  Compl. ¶ 41.  The Rehabilitation Act, through the ADA, bars employers from retaliating against employees who lodge complaints of discrimination or engage in other statutorily-protected conduct.  See Smith v. District of Columbia, 430 F.3d 450, 454–55 (D.C. Cir. 2005) (citing 42 U.S.C. § 12203(a)); see 29 U.S.C. § 791(f) (making the ADA's anti-retaliation provision (42 U.S.C. § 12203) applicable to Rehabilitation Act claims).  Retaliation claims under the Rehabilitation Act are governed by the familiar burden-shifting framework adopted in McDonnell-Douglas, 411 U.S. 792, 802–06 (1973).  See Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009) (citing Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004)).  "Under that framework, a plaintiff must establish a prima facie case of retaliation by showing that (1) he engaged in a statutorily protect activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two."  Id. (citing Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007) (emphasis added)).  However, once an employer produces a legitimate, nondiscriminatory reason for the adverse action, "the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer intentional . . . retaliation from all the evidence."  Carter, 387 F.3d at 878.

The defendant's proffered reason for terminating the plaintiff's employment was his absence from work without leave for over 900 days, Def.'s Mem., Ex. 23 (October 6, 2011 letter listing at Exhibit A the 919 days when the defendant was absent without leave between October 2005 and June 2009), which the Court finds is a legitimate, nondiscriminatory reason for the plaintiff's termination. In response, the plaintiff asserts that Veterans Affairs terminated his employment in retaliation for his October 13, 2011 letter, which reiterated his prior requests for an accommodation in the form of a reassignment and transfer. See Pl.'s Supp. Opp'n at 8. The plaintiff also asserts that he was terminated in retaliation for his efforts to inform a congressman and senator about the defendant's alleged failure to provide a reasonable accommodation for his alleged disability. See id. at 6–7. But none of this evidence—indeed, nothing in the record currently before the Court—is sufficient to support the conclusion that a reasonable jury could infer that the defendant's decision to terminate the plaintiff constituted retaliation, rather than the defendant's determination that it was appropriate to terminate his employment for being absent from work without leave for several years. See, e.g., Doak, 19 F. Supp. 3d at 280–81 (no disputed question of material fact existed regarding the Coast Guard's decision to remove plaintiff where evidence showed that the plaintiff was absent for nearly 50% of work hours in a year and the plaintiff merely argued that her absences were due to lack of accommodation for her disability), aff'd, 798 F.3d 1096, 1107–08 (D.C. Cir. 2015). The Court will therefore grant summary judgment in favor of the defendant with respect to Count III of the Complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant the defendant's motion for summary judgment and dismiss the Complaint in its entirety.

**SO ORDERED** this 23rd day of March, 2017.[7]

REGGIE B. WALTON<br>
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.